697 So.2d 1077 (1997)
William J. FALLEN
v.
NEW ORLEANS POLICE DEPARTMENT.
No. 97-CA-0022.
Court of Appeal of Louisiana, Fourth Circuit.
July 23, 1997.
*1078 Dwight W. Norton, Bernard V. Davis, Metairie, for Plaintiff/Appellant.
Scott P. Shea, Assistant City Attorney, Milton Osborne, Deputy City Attorney, Avis Marie Russell, City Attorney, New Orleans, for Defendant/Appellee.
Before BARRY, KLEES and LANDRIEU, JJ.
BARRY, Judge.
Plaintiff appeals a judgment by a hearing officer for the Office of Workers' Compensation which held that his entitlement to Supplemental Earnings Benefits ended February 1, 1996. Plaintiff argues that the defendant is not entitled to a credit for temporary total disability benefits, the hearing officer's determination of the date on which supplemental earnings benefits commenced was wrong, and termination of supplemental earnings benefits was arbitrary and capricious.
We reverse and hold that the hearing officer improperly credited temporary total disability benefits which the defendant paid against supplemental earnings benefits. We further hold that the defendant's termination of benefits was arbitrary and capricious, plaintiff is entitled to penalties and attorney fees, and we remand.

Facts
William Fallen was an "equipment operator one" for the New Orleans Police Department from June 1979 until he received a work related injury on February 1, 1986. The parties stipulated that the defendant began temporary total disability benefits of $309.59 every two weeks beginning February 23, 1986.[1]
In March 1992 orthopedist Dr. Raoul Rodriguez determined that Fallen had reached maximum medical improvement and released him to work light duty twenty hours per week. Fallen met with Susan Davidson, a vocational rehabilitation counselor, who testified that she identified job openings in conjunction with Fallen's doctor and New Orleans Civil Service in early 1992. Fallen did not respond to Davidson's March 23, 1992 letter and has not returned to work, although he did perform a limited painting job sometime after the accident (details are not in the record).
The defendant converted to supplemental earnings benefits in July 1992 based on Fallen's ability to work at least twenty hours per week and reduced the benefits to $194.68 biweekly ($97.34 per week). On March 10, 1995 Fallen filed a claim for compensation seeking reinstatement of temporary total as well as penalties and attorney fees. Defendant denied that Fallen was entitled to benefits, though defendant continued supplemental earnings benefits until February 24, 1996.
After a May 9, 1996 trial, the hearing officer held that the defendant properly converted the temporary total disability benefits to supplemental earnings benefits in July 1992; Fallen is not entitled to have those benefits reverted to temporary total; Fallen's entitlement to supplemental earnings benefits ended February 1, 1996; and defendant was not arbitrary and capricious when converting and terminating Fallen's benefits.
The reasons for judgment state that the temporary total disability payments exceeded the amount due for the maximum allowable 520 weeks of supplemental earnings benefits.
*1079 The hearing officer allowed a credit against supplemental earnings benefits for temporary total disability payments which defendant had paid and determined that defendant owed no additional benefits.
LSA R.S. 23:1221(3) provides in part that Supplemental Earning Benefits payments are not to exceed 520 weeks. If claimant were paid SEB for 520 weeks, the total amount of benefits to which he would be entitled is $50,616.80 ($97.34 × 520). LSA R.S. 23:1223(B) allows for reduction in SEB for temporary, permanent and partial total disability payments. At the time claimant's benefits were converted, defendants had paid $51,583.76 in TTD. The SEB payments brought claimant's total indemnity payments to $69,764.32$19,147.52 above his SEB entitlement.

Credit for Temporary Total Disability Benefits
Fallen argues that the hearing officer improperly gave the defendant a credit against supplemental earnings benefits for the previously paid temporary total disability benefits.
Prior to 1990 La. R.S. 23:1223 did not provide for a credit to the employer against supplemental earnings benefits. Rather, when temporary total disability, permanent total disability, or supplemental earnings benefits had been paid, that amount was to be deducted from any permanent partial disability benefits. Acts 1989, No. 454, § 6, effective January 1, 1990, added subparagraph (B) to provide the employer with a credit against supplemental earnings benefits for amounts paid under the temporary total disability provisions:
... (W)hen compensation has been paid under R.S. 23:1221(1) [temporary total disability], (2) [permanent total disability], or (4) [permanent partial disability], the amount of such payment shall be deducted from any compensation allowed under R.S. 23:1221(3) [supplemental earnings benefits]....
La. R.S. 23:1223(B).
In Cline v. St. Jude Medical Center, Inc., 619 So.2d 712 (La.App. 4th Cir.1993), this Court held that the 1990 amendment was substantive and not retroactive. However, the Court allowed a credit for temporary total disability payments which the plaintiff received after January 1, 1990, the effective date of the statute. The Court reasoned that those benefits did not become due until after the amendment became effective.
(B)ecause weekly compensation benefits for temporary total disability are dependent on the disability continuing, and benefits technically become due only upon the continued existence of that disability week to week, any amounts plaintiff received for temporary total disability benefits after the effective date of the 1990 amendment to R.S. 12:1223(B) should be subject to the credit.
Id. at 716.
In Thibodeaux v. Diamond M Drilling Co., 93-2963 (La.2/25/94), 632 So.2d 736, the Supreme Court held that the 1990 amendment was substantive and disallowed its retroactive application.
(R)etroactive application of this amendment is impermissible and the employer has no right to a reduction of benefits because no such reduction was authorized at the time of plaintiff's injury.
Id.
Thus the hearing officer clearly erred by allowing a credit for temporary total disability benefits paid before January 1, 1990 and by terminating Fallen's entitlement to benefits on February 1, 1996. Id.; Cline v. St. Jude Medical Center, Inc., supra.
Fallen argues that Thibodeaux implicitly overruled Cline to the extent that Cline allowed a credit for temporary total disability benefits paid after January 1, 1990, the effective date of the amendment. Fallen submits that the defendant is not entitled to a credit for any temporary total disability benefits.
Thibodeaux did not state whether temporary total disability benefits in that case were paid after the January 1, 1990 effective date of the amendment and did not consider whether temporary total disability payments after January 1, 1990 are subject to the credit. The Third Circuit appellate opinion *1080 in Thibodeaux is unpublished and cannot aid our review. Thus we decline to hold that Thibodeaux overruled Cline`s holding that the employer is entitled to a credit for benefits which became due after January 1, 1990.
However, the credit for temporary total disability benefits paid after January 1, 1990 does not extinguish Fallen's entitlement to supplemental earnings benefits after February 1, 1996. Between January 1, 1990 and July 26, 1992 (the date defendant converted to supplemental earnings benefits), defendant paid temporary total disability benefits of $19,194.58. When added to the supplemental earnings benefits already paid, the total is less than $50,616.80 (the maximum 520 weeks of supplemental earnings benefits). Defendant has not shown that it is otherwise entitled to terminate benefits, and Fallen is entitled to supplemental earnings benefits from defendant.

Disability
The defendant argues that Fallen did not prove that he remains disabled and therefore the hearing officer correctly held he is not entitled to benefits after February 1, 1996. That argument has no merit.
The hearing officer held that supplemental earnings benefits were properly terminated on February 1, 1996 based on the 520 week limitation; she did not hold that Fallen is no longer disabled. Moreover, the evidence does not support termination of supplemental earnings benefits.
Under La. R.S. 23:1221(3), the employee must prove by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of his pre-injury wages. Once that burden is met, the burden of proof shifts to the employer who, if he wishes to defeat or reduce supplemental earnings benefits, must show that the employee is physically able to perform a certain job, that the job was offered to the employee or available in his or the employer's reasonable geographic region. Daugherty v. Domino's Pizza, 95-1394 (La.5/21/96), 674 So.2d 947, 952. See also Reed v. Direct Installers, 95-1684 (La.App. 4 Cir. 1/31/96), 669 So.2d 529, 534.
The hearing officer held that the defendant properly began paying supplemental earnings benefits in June 1992. Defendant does not contest that Fallen was entitled to supplemental earnings benefits prior to termination. There is no evidence to defeat those benefits.
In June 1992 orthopedist Dr. A.N. Diodene', Jr. thought that Fallen could return to light duty or sedentary work four hours per day and gradually increase to a full work day. In August 1993 Dr. Rodriguez determined that Fallen could perform light work twenty hours per week. In December 1993 neurosurgeon Dr. Dzung Dinh determined that Fallen could "probably" return to work on a light duty basis, twenty hours per week. An August 25, 1995 medical note by orthopedist Dr. James Ricciardi that Dr. Ricciardi did not find "anything of any serious nature, certainly no reason to consider additional surgery" appears to be a comment concerning the need for additional surgery and does not establish that Fallen is not disabled. The vocational rehabilitation counselor identified available part-time employment which formed the basis for the July 1992 reduction of benefits from temporary total. However, there is no medical evidence that Fallen can work full-time and no evidence of available jobs for which Fallen can earn ninety percent of his pre-injury wage. The defendant did not sustain its burden of proof to terminate benefits.

Commencement of Supplemental Earnings Benefits
Fallen argues that the hearing officer incorrectly found that supplemental earnings benefits began on January 3, 1992 rather than July 26, 1992 when the defendant reduced Fallen's benefits. That argument has no merit.
The judgment does not mention the date that supplemental earnings benefits began. The reasons correctly note that the evidence shows Fallen reached maximum medical improvement on January 3, 1992. The hearing officer's statement does not constitute a finding that supplemental earnings benefits commenced on that date.

*1081 Penalties and Attorney Fees

Fallen argues that the hearing officer improperly denied penalties and attorney fees because the defendant discontinued benefits without cause. He also requests attorney fees for this appeal. The defendant responds that it properly reduced benefits in July 1992 based on Fallen's ability to work twenty hours per week, but does not explain the basis for its decision to terminate supplemental earnings benefits in February 1996.
Under La. R.S. 23:1201(F), failure to timely pay benefits shall result in a penalty of twelve percent of any unpaid compensation or fifty dollars per calendar day, whichever is greater; however the fifty dollar per day penalty shall not exceed $2000.
La. R.S. 23:1201.2 governs attorney fees for the arbitrary discontinuance of benefits:
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims....
Penalties should be imposed only in those instances in which the facts negate probable cause for nonpayment. Miller v. City of New Orleans, 95-1005, p. 11 (La.App. 4 Cir. 12/14/95), 665 So.2d 1293, 1299. The employer must show that a reasonable effort was made to ascertain the employee's exact condition before denying benefits, and employers have an ongoing duty to review medical reports concerning the disability. Id.
Richard Patin, supervisor for the workers' compensation division of New Orleans Rosenbush Claims Service, testified that benefits were terminated on February 24, 1996 because "Mr. Fallen had received 520 weeks of compensation benefits under the S.E.B. Program."
La. R.S. 23:1221(3)(d) provides in pertinent part:
The right to supplemental earnings benefits pursuant to this Paragraph shall in no event exceed a maximum of five hundred twenty weeks....
Fallen's benefits were reduced and converted to supplemental earnings benefits in July 1992. Five hundred twenty weeks had not passed from that date. Moreover, defendant has presented no evidence to defeat those benefits, and the credit for temporary total disability payments has not extinguished defendant's obligation. The defendant had no basis to terminate benefits. Penalties and attorney fees are due. We decline to impose costs for this appeal.
The matter is remanded for the hearing officer to determine the penalties and attorney fees.[2]

Overpayment
The defendant submits that it overpaid Fallen temporary total disability benefits. The defendant claims that the parties stipulated that the initial compensation rate was $154.78 per week and Fallen's average weekly wage at the time of the accident was $180.00. The defendant claims it owed only $120.00 per week and urges this Court to credit the amount of the overpayment.
Defense counsel told the court that it was his "understanding" that Fallen's average weekly wage was $180.00. Fallen did not stipulate. There is no basis to reimburse defendant.

Conclusion
The defendant is not entitled to a credit for temporary total benefits paid before January 1, 1990. The hearing officer erred by crediting that amount and by holding that Fallen's entitlement to supplemental earnings benefits ended February 1, 1996. Defendant *1082 had no basis to terminate Fallen's supplemental earnings benefits on February 24, 1996. That termination was arbitrary, capricious, and without cause, and Fallen is entitled to penalties and attorney fees. We remand for the hearing officer to determine the penalties and attorney fees due.
REVERSED AND REMANDED.
NOTES
[1] Counsel said the weekly benefit was $154.78 (though that is less than half of $309.59). The log sheet from Rosenbush Claims Services shows bi-weekly payments of $309.02 from February 23 through April 26, 1986. That amount was increased to $309.59 on April 27, 1986.
[2] Defendant asserts as alternative bases for termination of benefits that Fallen retired and committed fraud by failing to report income while collecting supplemental earnings benefits. The evidence shows that defendant terminated benefits based on the statutory 520 week limitation for supplemental earnings benefits rather than retirement or fraud. Therefore, we do not consider those issues.